UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WENDELL CRAWFORD,

       Plaintiff,                                     Hon. Janet T. Neff

v.                                                     Case No. 1:10 CV 1101

LARRY NIELSEN, et al.,

       Defendants.
_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendants' Motion for Judgment on the Pleadings. (Dkt. #23). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motion be **granted** and this matter **terminated**.

## BACKGROUND

Plaintiff initiated this action in state court on September 23, 2010, against Larry Nielsen, current Village Manager of the Village of Paw Paw, Michigan.[1] (Dkt. #1). Defendant Nielsen removed the matter to this Court on November 8, 2010. *Id.* On December 17, 2010, Plaintiff submitted an amended complaint against Nielsen and Kelley Page, current Village Attorney for the Village of Paw, Paw Michigan.[2] (Dkt. #10). On March 14, 2011, Plaintiff submitted yet another amended complaint

---

[1] Nielsen has served as Village Manager for the Village of Paw Paw since 2007. *See* Michigan Municipal League, Board of Trustees, available at http://www.mml.org/insurance/fund/about/board.html (last visited on December 9, 2011).

[2] While it is not clear when Page began serving as Village Attorney for the Village of Paw Paw, she was first licensed to practice law in the State of Michigan in 1975. *See* Michigan Bar Association Member Directory, available at http://www.michbar.org/memberdirectory/detail.cfm?PID=24787 (last visited on December 9, 2011).

against Nielsen and Page. (Dkt. #20). The following allegations are contained in Plaintiff's Second Amended Complaint.

On October 13, 1956, Plaintiff was charged with the crime of furnishing alcohol to minors. On October 14, 1956, Plaintiff, without benefit of counsel, pleaded guilty to this charge and was sentenced to serve 10 days in jail and pay fifty-nine dollars and ninety cents ($59.90) in fines and costs. On December 17, 1956, Plaintiff was again charged with furnishing alcohol to minors. The following day, Plaintiff, again without benefit of counsel, pleaded guilty after which he was sentenced to serve ninety days in jail. On August 20, 2008, Plaintiff's convictions for these two offenses were set aside because they were obtained without benefit of counsel.

Plaintiff brings this action, pursuant to 42 U.S.C. § 1983, against the current Village Manager and Village Attorney of the Village of Paw Paw alleging violations of his rights stemming from his 1956 convictions. Specifically, Plaintiff alleges that he was denied his right to counsel, subjected to cruel and unusual punishment, and denied due process. Plaintiff also asserts various state law tort claims. Plaintiff is suing Defendants in their individual and official capacities seeking declaratory relief and more than four million dollars in monetary damages. Defendants now move for judgment on the pleadings.

## **LEGAL STANDARD**

A motion for judgment on the pleadings brought pursuant to Federal Rule of Civil Procedure 12(c) is evaluated pursuant to the same standard applicable to motions to dismiss for failure to state a claim on which relief may be granted under Rule 12(b)(6). *See, e.g. Patterson v. Novartis Pharmaceuticals Corp.*, 2011 WL 3701884 at *2 (6th Cir., Aug. 23, 2011). A Rule 12(b)(6) motion to dismiss for failure to state a claim tests the legal sufficiency of a complaint by evaluating the assertions

therein in a light most favorable to Plaintiff to determine whether such states a valid claim for relief. *See In re NM Holdings Co., LLC*, 622 F.3d 613, 618 (6th Cir. 2000).

As the Supreme Court recently stated, a motion to dismiss will be denied only where the "[f]actual allegations [are] enough to raise a right for relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007). As the Supreme Court more recently held, to survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, - - - U.S. - - -, 129 S.Ct. 1937, 1949 (2009). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." If the complaint simply pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* As the Court further observed:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . .Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . .Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the wellpleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not "show[n]" - "that the pleader is entitled to relief."

*Id.* at 1949-50 (internal citations omitted).

When resolving a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider the complaint and any exhibits attached thereto, public records, items appearing in the record of the case, and exhibits attached to the defendant's motion to dismiss provided such are referenced in the complaint and central to the claims therein. *See Bassett v. National Collegiate Athletic Assoc.*, 528 F.3d 426, 430 (6th Cir. 2008); *see also*, *Continental Identification Products, Inc. v. EnterMarket, Corp.*, 2008 WL 51610 at *1, n.1 (W.D. Mich., Jan. 2, 2008) ("an exhibit to a pleading is considered part of the pleading" and "the Court may properly consider the exhibits. . .in determining whether the complaint fail[s] to state a claim upon which relief may be granted without converting the motion to a Rule 56 motion"); *Stringfield v. Graham*, 212 Fed. Appx. 530, 535 (6th Cir. 2007) (documents "attached to and cited by" the complaint are "considered parts thereof under Federal Rule of Civil Procedure 10(c)").

## **ANALYSIS**

Defendants assert a single claim, that they are entitled to relief on the ground that Plaintiff's claims were not timely filed. Before addressing Defendants' argument, however, the Court discerns at least one additional deficiency with Plaintiff's claims that require discussion. The Court has the authority to sua sponte address such matters because even though Plaintiff paid the filing fee in this matter, he was incarcerated with the Michigan Department of Corrections when he initiated this matter.[3] Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous,

---

[3] Plaintiff has been incarcerated during the pendency of this matter as he is serving a life sentence on a 1978 conviction for second degree murder. *See* http://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=84429 (last visited on December 9, 2011).

malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c).

I.       **Federal Law Claims - Individual Capacity Claims**

As Plaintiff concedes in response to the present motion, he "does not know" the identity of the individual or individuals involved in prosecuting him for furnishing alcohol to minors in 1956. (Dkt. #26 at 14). Instead, Plaintiff has simply sued the current Village Manager and Village Attorney of the Village of Paw Paw, both of whom assumed their present positions many, many years after the events giving rise to this action. As previously noted, Plaintiff is suing Defendants in both their individual and personal capacities seeking declaratory and monetary relief.

To impose liability against an individual in a § 1983 action, a plaintiff much allege that the individual actively engaged in unconstitutional behavior. *See Spencer v. Bouchard*, 449 F.3d 721, 730 (6th Cir. 2006). Plaintiff, however, makes no allegations of wrong-doing against Defendant Nielsen or Defendant Page. This is not surprising as neither Defendant was involved in the events giving rise to this action. Given Plaintiff's failure to allege any wrongful behavior on the part of either Defendant, the undersigned recommends that Plaintiff's federal law claims asserted against Defendant Nielsen and Defendant Page in their personal capacity be dismissed for failure to state a claim on which relief may be granted.

II.      **Federal Law Claims - Official Capacity Claims**

Plaintiff asserts that his 1956 convictions for furnishing alcohol to a minor, obtained without benefit of counsel, were "unconstitutional in violation of *Gideon v. Wainwright*, 372 U.S. 335

(1963)." Plaintiff initiated the present action seeking declaratory and monetary relief for his allegedly unconstitutional convictions. Defendants assert that Plaintiff's claims must be dismissed for violation of the relevant statute of limitations.

The story of Clarence Earl Gideon is well known. Gideon was charged in a Florida state court with committing a felony. *Gideon*, 372 U.S. at 336-37. Gideon, who was indigent and without legal representation, requested that the court appoint counsel to assist with his defense. *Id.* at 337. The court denied Gideon's request on the ground that under Florida law such was permissible only where an individual is charged with a capital offense. Following a jury trial, at which he represented himself, Gideon was convicted and sentenced to serve five years in prison. Gideon then unsuccessfully challenged his conviction in state court on the ground that the trial court's refusal to appoint him counsel violated his rights under the United States Constitution. *Id.* The United States Supreme Court subsequently agreed to hear the case to again explore the dimensions and scope of a state criminal defendant's right to counsel under the Sixth Amendment. *Id.* at 338.

The *Gideon* Court reaffirmed the principle that "a provision of the Bill of Rights which is fundamental and essential to a fair trial is made obligatory upon the States by the Fourteenth Amendment." *Id.* at 340-42. Disagreeing with prior precedent, however, the *Gideon* Court concluded that the right to counsel articulated in the Sixth Amendment was, in fact, fundamental and essential to a fair trial. *Id.* at 342-43. Accordingly, the Court reversed Gideon's conviction. *Id.* at 345.

While the *Gideon* Court did not expressly limit the scope of its holding to circumstances in which a criminal defendant was charged with a felony, its decision was thusly interpreted. *See, e.g., Duncan v. State of Louisiana*, 391 U.S. 145, 179 (1968) (Harlan, J., dissenting) (recognizing that *Gideon* extended the right to counsel "to all felony cases"); *Loper v. Beto*, 405 U.S. 473, 481 (1972) (stating

that, "[i]n [*Gideon*], the Court unanimously announced a clear and simple constitutional rule: In the absence of waiver, a felony conviction is invalid if it was obtained in a court that denied the defendant the help of a lawyer").

In an effort to clarify its decision in *Gideon*, the Court revisited this particular issue in *Argersinger v. Hamlin*, 407 U.S. 25 (1972). As the *Argersinger* Court observed, while *Gideon* concerned a felony trial, the Court "did not so limit the need of the accused for a lawyer." *Id.* at 31. As the Court further observed, the rationale underlying *Gideon* (and other cases) "has relevance to any criminal trial, where an accused is deprived of his liberty." *Id.* at 32. Accordingly, the Court concluded that "absent a knowing and intelligent waiver, no person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at his trial." *Id.* at 37. In *Scott v. Illinois*, 440 U.S. 367 (1979), the Court clarified its *Argersinger* decision, holding that, in misdemeanor cases, regardless of whether imprisonment is authorized, appointment of counsel is required only if imprisonment is actually imposed. *Id.* at 368-74.

The holdings in both *Gideon* and *Argersinger* were subsequently given retroactive application. *See, e.g., Linkletter v. Walker*, 381 U.S. 618, 628 n.13 (1965) (noting that "[t]he rule in *Gideon*...was actually applied retroactively in that case since Gideon had collaterally attacked the prior judgment by post-conviction remedies"); *McConnell v. Rhay*, 393 U.S. 2, 3 (1968) (recognizing that the decision in *Gideon* was given retroactive application); *Berry v. City of Cincinnati, Ohio*, 414 U.S. 29 (1973) (per curiam) ("[t]hose convicted prior to the decision in *Argersinger* are entitled to the constitutional rule enunciated in that case").

As previously noted, Plaintiff was incarcerated following both of his convictions for furnishing alcohol to minors. Thus, Plaintiff's convictions and sentences, while consistent with

Supreme Court authority when obtained, violated subsequent Supreme Court authority given retroactive effect. Whether Plaintiff's convictions violated *Gideon* or *Argersinger* depends on whether Plaintiff was charged with a felony or misdemeanor. If Plaintiff was charged with a felony, his convictions run afoul of the Court's decision in *Gideon*. On the other hand, if Plaintiff was only charged with a misdemeanor *Argersinger* and not *Gideon* is the relevant decision.[4] At first glance, it would appear that this distinction is relevant for determining the date on which the statute of limitations began to run in this matter. As discussed below, however, the Court finds that the statute of limitations did not begin to run until well after the date on which the Supreme Court made clear that *Gideon* and *Argersinger* were to be applied retroactively.

Plaintiff's federal law claims are brought pursuant to 42 U.S.C. § 1983. Section § 1983 itself, however, contains no statute of limitations. *See, e.g., Bonner v. Perry*, 564 F.3d 424, 430 (6th Cir. 2009). In such a circumstance, the Court must borrow the statute of limitations of the most analogous state law cause of action. *Id.* (because "Congress has failed to legislate a statute of limitations for § 1983 claims," the Court must "borrow and apply to all § 1983 claims the one most analogous state statute of limitations"). The Supreme Court has held that "[b]ecause § 1983 claims are best characterized as personal injury actions. . .a State's personal injury statute of limitations should be applied to all § 1983 claims." *Owens v. Okure*, 488 U.S. 235, 240-41 (1989). Where the relevant state law provides multiple statutes of limitation for personal injury actions, courts are to apply the "general or residual statute for personal injury actions." *Okure*, 488 U.S. at 249-50; *Bonner*, 564 F.3d at 430.

---

[4] While not entirely clear from the present record, it seems almost certain that Plaintiff was charged only with misdemeanors on the two occasions in question. *See* Mich. Comp. Laws §§ 436.33 (1948), 436.50 (1948), 436.33 (1955), 436.50 (1989), 436.1701 (2011). While not dispositive, Plaintiff asserted in a recent pleading that he was only charged with misdemeanors. (Dkt. #29). As discussed below, however, whether Plaintiff was charged with felonies or misdemeanors is irrelevant to the analysis.

Michigan law articulates multiple statutes of limitation applicable to personal injury actions. *See* Mich. Comp. Laws § 600.5805. Accordingly, the limitations period applicable in the present action is three years, as articulated in Mich. Comp. Laws § 600.5805(10). *See Hardin v. Straub*, 490 U.S. 536, 540 (1989); *Jones v. City of Hamtramck*, 905 F.2d 908, 909 (6th Cir. 1990); *Jones v. City of Allen Park*, 167 Fed. Appx. 398, 407 (6th Cir., Jan. 3, 2006).[5]

While the Court looks to state law to identify the applicable statute of limitations, federal law must be applied when determining when the relevant limitations period begins to run. *See Sharpe v. Cureton*, 319 F.3d 259, 266 (6th Cir. 2003); *Hebron v. Shelby County Government*, 406 Fed. Appx. 28, 30 (6th Cir., Dec. 22, 2010). Under federal law, the statute of limitations begins to run "when plaintiffs knew or should have known of the injury which forms the basis of their claims." *Ruff v. Runyon*, 258 F.3d 498, 500 (6th Cir. 2001); *Ohio Midland, Inc. v. Ohio Dept. of Transp.*, 286 Fed. Appx. 905, 911 (6th Cir., July 1, 2008). A plaintiff has reason to know of his injury when he "should have discovered it through the exercise of reasonable diligence." *Dotson v. Lane*, 360 Fed. Appx. 617, 619 n.2 (6th Cir., Jan. 5, 2010) (quoting *Sevier v. Turner*, 742 F.2d 262, 273 (6th Cir. 1984)).

Based on the previous discussion, it would appear that the statute of limitations began to run in this matter no later than November 5, 1973, the date on which the *Berry* Court held that "[t]hose convicted prior to the decision in *Argersinger* are entitled to the constitutional rule enunciated in that case." Before arriving at such a conclusion, however, the Court must not only determine the date on which Plaintiff can be held to have understood that he had a potential cause of action, but the date on which he can be held to understand the statute of limitations applicable to such.

---

[5] The *Hardin* and *City of Hamtramck* courts identified the relevant provision as Mich. Comp. Laws § 600.5805(8). This particular provision is presently codified at Mich. Comp. Laws § 600.5805(10).

The Sixth Circuit's August 8, 1984, decision in *Sevier v. Turner*, 742 F.2d 262 (6th Cir. 1984), very clearly articulates the manner in which the statute of limitations is to be calculated in a § 1983 action.[6] In *Sevier*, the court clearly stated that "state law provides the statute of limitations to be applied in a § 1983 damages action." *Id.* at 272. The court also clearly stated that "[t]he statute of limitations commences to run when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Id.* at 273.

As discussed above, Plaintiff knew or should have known no later than November 5, 1973, that his 1956 convictions for furnishing alcohol to a minor violated his Sixth Amendment right to counsel. Moreover, Plaintiff knew or should have known no later than August 8, 1984, that the statute of limitations began to run when he knew or had reason to know of his injury. Thus, the three year statute of limitations applicable in this matter began to run, at the absolute latest, on August 8, 1984. Thus, so long as Plaintiff could have pursued at that time the particular claims he is presently asserting, the present action, filed September 23, 2010, is untimely. A review of relevant Supreme Court authority makes clear that Plaintiff could have pursued his present claim for damages during the pendency of the statute of limitations.

In *Preiser v. Rodriguez*, 411 U.S. 475 (1973), the Court held that "when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." *Id.* at 500. The following year, the Court held that while *Preiser* precluded injunctive relief under § 1983 for claims challenging the fact or duration of

---

[6] While there exists arguably relevant authority which predates the Sixth Circuit's decision in *Sevier*, such implicated provisions other than § 1983 or involved circumstances sufficiently distinct from that presently before the Court, as to perhaps raise doubt as to how the statute of limitations is to be calculated in the present action. The *Sevier* decision, however, suffers from no such ambiguities and instead clearly articulates the standard applicable in this matter.

confinement, § 1983 claims seeking declaratory or monetary relief "for the deprivation of civil rights resulting from the use of. . .allegedly unconstitutional procedures" could be asserted. *Wolff v. McDonnell*, 418 U.S. 539, 553-55 (1974). As Plaintiff is presently seeking declaratory and monetary relief for an alleged violation of his civil rights that resulted from unconstitutional procedures (i.e., failure to appoint counsel), Plaintiff's present claims could certainly have been asserted in light of the Court's decision in *Wolff*.

This remained the case until the Supreme Court, almost twenty years later, decided *Heck v. Humphrey*, 512 U.S. 477 (1994). Heck brought a § 1983 damages action alleging that defendants had conducted an "unlawful, unreasonable, and arbitrary investigation," had destroyed exculpatory evidence, and caused illegally obtained evidence to be introduced at his criminal trial. *Id.* at 478-79. The Supreme Court concluded that Heck's claim was not cognizable. *Id.* at 486-90. Specifically, the Court held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions who unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* at 486-87.

Citing to *Heck*, Plaintiff asserts that until his convictions were set aside in 2008, his claims were not cognizable. As discussed above, however, Plaintiff's claims were cognizable, and the statute of limitations began to run, beginning almost 10 years before *Heck* was decided. Moreover, *Heck* did not serve to revive stale claims regarding which the statute of limitations had already since expired. Thus, the Court finds Plaintiff's reliance on *Heck* misplaced. Accordingly, the undersigned recommends

that Plaintiff's federal law claims, asserted against Defendants in their official capacity, be dismissed for failure to comply with the relevant statute of limitations.

### III. State Law Claims

Plaintiff also asserts the following state law claims: (1) malicious prosecution; (2) abuse of process; and (3) gross negligence. Plaintiff's allegations fail to state a claim on which relief may be granted. Moreover, these claims are untimely.

#### A. Malicious Prosecution

Plaintiff alleges that the decision to charge and prosecute him in 1956 constitutes the tort of malicious prosecution. Under Michigan law, to prevail on his claim for malicious prosecution Plaintiff must establish the following: (1) the defendant initiated a criminal prosecution against him; (2) the criminal proceeding terminated in his favor; (3) the defendant lacked probable cause to initiate the criminal proceeding; and (4) the criminal proceeding was undertaken with malice or for a purpose other than bringing Plaintiff to justice. *See Matthews v. Blue Cross and Blue Shield of Michigan*, 572 N.W.2d 603, 609-10 (Mich. 1998). Plaintiff's allegations fail to state a claim on which relief may be granted.

As previously noted, Defendants played no role in the actions giving rise to this claim. Thus, Plaintiff's claim fails at step one of the analysis as he has failed to assert this claim against the individual or individuals who initiated a criminal prosecution against him. Plaintiff has failed to allege that the charges against him were initiated with malice or improper purpose. Finally, Plaintiff has failed to allege that there did not exist probable cause to charge him with providing alcohol to minors. Instead, Plaintiff's claim is based on his belief that his 1956 convictions and subsequent jail sentences were

unlawful at the time they were imposed because counsel was not appointed to represent him. As discussed above, however, at the time of Plaintiff's convictions and sentences he was not entitled to the appointment of counsel. It was not until many years later that the Supreme Court held otherwise. The challenged actions, when undertaken, were lawful and consistent with then existing Supreme Court authority. Thus, the undersigned recommends that Plaintiff's claim for malicious prosecution be dismissed for failure to state a claim on which relief may be granted.

In the alternative, the undersigned recommends that this claim be dismissed for failure to comply with the relevant statute of limitations. With respect to a claim of malicious prosecution, the statute of limitations does not begin to run until the underlying criminal action is terminated in favor of the accused. *See Peterson Novelties, Inc. v. City of Berkley*, 672 N.W.2d 351, 360-61 (Mich. Ct. App. 2003). The statute of limitations for claims of malicious prosecution is two years under Michigan law. *See* Mich. Comp. Laws § 600.5805(5). As previously noted, the two convictions in question were set aside on August 20, 2008. Plaintiff, however, did not initiate this action until September 23, 2010, more than two years after the limitations period began to run. Thus, Plaintiff's malicious prosecution claim is untimely. Accordingly, the undersigned recommends, in the alternative, that Plaintiff's malicious prosecution claims be dismissed for failure to comply with the statute of limitations.

B.   Abuse of Process

Plaintiff alleges that the decision to charge him in 1956 with furnishing alcohol to minors constitutes the tort of abuse of process. Under Michigan law, to prevail on this claim Plaintiff must establish that the defendant acted with an ulterior purpose and engaged in conduct "which is improper

in the regular conduct or prosecution of a proceeding." *See Pilette Industries, Inc. v. Alexander*, 169 N.W.2d 149, 150 (Mich. Ct. App. 1969). This claim fails for several reasons.

Plaintiff has asserted this claim against two individuals who played absolutely no role in the conduct giving rise thereto. Plaintiff has also failed to allege that the individuals involved in charging and prosecuting him in 1956 acted with an ulterior purpose or engaged in improper conduct. Again, Plaintiff's claim is based on his assertion that his 1956 convictions and subsequent jail sentences were unlawful at the time they were imposed because counsel was not appointed to represent him. As previously discussed, however, at the time of Plaintiff's convictions and sentences he was not entitled to the appointment of counsel. It was not until many years later that the Supreme Court held otherwise. Thus, the challenged actions, when undertaken, were lawful and consistent with then existing Supreme Court authority. Accordingly, the undersigned recommends that Plaintiff's abuse of process claims be dismissed for failure to state a claim on which relief may be granted.

Plaintiff's abuse of process claim is also untimely filed. Unlike a claim for malicious prosecution, a plaintiff pursuing a claim for abuse of process is not required to first establish that the proceeding in question was terminated in his favor. *See Moore v. Michigan National Bank*, 117 N.W.2d 105, 106-07 (Mich. 1962). Instead, the claim accrues when the defendant engages in "the misuse of process, no matter how properly obtained, for any purpose other than that which it was designed to accomplish." *Id.* at 107. Plaintiff's claim arose, therefore, when the prosecutor initiated criminal proceedings against him. This occurred in 1956. The statute of limitations for a claim for abuse of process is three years. *Id.* Plaintiff's abuse of process claim is, therefore, untimely. Accordingly, the undersigned recommends, in the alternative, that Plaintiff's abuse of process claims be dismissed for failure to comply with the statute of limitations.

C.     Gross Negligence

Finally, Plaintiff alleges that the decision by the prosecutor to initiate criminal charges against him in 1956 constitutes gross negligence. Just as with the two state law claims discussed above, Plaintiff has failed to assert this claim against any of the individuals involved in the conduct giving rise to this claim. Plaintiff has instead asserted this claim against two individuals who were not involved in the events giving rise to this claim. Furthermore, As courts recognize, however, "Michigan courts do not allow a plaintiff to premise a negligence claim on an intentional tort." *Sutton v. Hamilton*, 2009 WL 3004560 at *6 (E.D. Mich., Sept. 16, 2009) (citing *VanVorous v. Burmeister*, 687 N.W.2d 132 (Mich. Ct. App. 2004)); *see also*, *Mead v. County of St. Joseph*, 2008 WL 441129 at *8 (W.D. Mich., Feb. 13, 2008) (same); *Gentry v. Wayne County Deputy Sheriff Carmona*, 2011 WL 4810847 at *4 (Mich. Ct. App., Oct. 11, 2011) ("this Court has consistently rejected attempts to transform claims involving elements of intentional torts into claims of gross negligence"). Plaintiff clearly alleges that the conduct giving rise to this action was intentional. The undersigned recommends, therefore, that Plaintiff's gross negligence claim be dismissed for failure to state a claim on which relief may be granted.

Moreover, Plaintiff's gross negligence claim is untimely. The statute of limitations began to run on this particular claim "on the date on which the plaintiff was harmed by the defendant's act, not the date on which the defendant acted negligently because that would permit a cause of action to be barred before any injury resulted." *Schaendorf v. Consumers Energy Co.*, 739 N.W.2d 402, 406 (Mich. Ct. App. 2007). Plaintiff's claim is based on the failure to appoint him counsel prior to securing convictions for the two charges of furnishing alcohol to minors. As previously noted, Plaintiff was not

entitled to the appointment of counsel when these convictions were initially obtained. It was not until many years later that this right was recognized and made retroactive.

Plaintiff's claim accrued no later than November 5, 1973, the date on which the Supreme Court held that its *Argersinger* decision was to be applied retroactively. The statute of limitations applicable to this claim is three years. *See Oole v. Oosting*, 266 N.W.2d 795, 797 (Mich. Ct. App. 1978) (citing Mich. Comp. Laws § 600.5805). Plaintiff's claim, filed in 2010, is clearly untimely. Accordingly, the undersigned recommends, in the alternative, that Plaintiff's gross negligence claims be dismissed for failure to comply with the statute of limitations.

## **CONCLUSION**

For the reasons articulated herein, the undersigned recommends that Defendants' Motion for Judgment on the Pleadings, (dkt. #23), be **granted** and this matter terminated.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date: December 29, 2011                              /s/ Ellen S. Carmody
                                                     ELLEN S. CARMODY
                                                     United States Magistrate Judge